KMA ZUCKERT LLC
1350 Broadway, Suite 2410
New York, NY  10018
(212) 922-0450
David Y. Loh (DL 0460)

Attorneys for Plaintiff
GEODIS USA, LLC
(File No.: 448024.00002 DYL)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GEODIS USA, LLC                                              23 Civ.                   (      )

                Plaintiff,

    -against-                                           **COMPLAINT**

TURN 5, INC.,                                               JURY DEMAND

                Defendant.

------------------------------------------------------------X

       Plaintiff, **GEODIS LOGISTICS, LLC**, by its attorneys, KMA ZUCKERT LLC, as and for its Complaint herein, alleges upon information and belief:

### PREDICATE

1.      This civil action is brought by plaintiff against defendant, to recover money damages for the breach of a binding contract to supply certain transportation services.  This contract will be described in further detail later in this complaint.  The relief sought includes compensatory damages, interest, costs and attorneys fees and expenses.

## JURISDICTION AND VENUE

2.    This claim arises out of the international carriage of cargo which involves issues of interstate commerce and federal common law, and the matter in controversy exceeds ten thousand dollars ($10,000), exclusive of interest and costs, giving rise to jurisdiction pursuant to 28 U.S.C. § 1331 and 1337. There also is supplemental jurisdiction under 28 U.S.C. § 1367 in this action.

3.    The involved contract contains a mandatory forum selection clause which states as follows:

> 14. **Governing Law and Consent to Venue**. This Agreement is governed by and construed in accordance with U.S. maritime law, or New York law where U.S. maritime law does not provide the rule of decision, exclusive of their respective conflicts of law principles, and any dispute arising out of, or in connection with this Agreement, shall be referred to the federal courts of the Southern District of New York.

4.    Venue of this action is predicated upon 28 U.S.C. § 1391(b), since defendant transacts its affairs within, or derives income from sales within the Southern District of New York.

## PARTIES AND RELATIONSHIPS

5.    Plaintiff **GEODIS USA, LLC** ("**Geodis**" or "**Plaintiff**") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 5101 South Broad Street, Philadelphia, PA 19112, and is in the business of providing transportation management services, including arranging from various transportation and logistics related services on behalf of its customers with underlying ocean carriers as service providers.

6.    Defendant **TURN 5, INC. ("TURN5**" or "**Defendant")** is a domestic corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of

business located at 600 Cedar Hollow Road, Paoli, PA  19301, and is in the business of

providing e-commerce services for aftermarket automotive parts.

## FACTUAL BACKGROUND

7.      Geodis arranged transportation management services for the benefit of TURN5 pursuant

to a NVOCC Service Agreement dated March 10, 2022 ("the Contract"), annexed hereto

as Exhibit "A". Under the Contract, Geodis provided certain transportation management

services to TURN5 and TURN5 agreed to pay for those services.

8.      Prior to execution of the Contract in 2022, ocean freight rates had increased dramatically

and were regarded as being volatile in the sense that pricing could change significantly and

without warning.

9.      Under the Contract, Geodis provided TURN5 fixed pricing for certain ocean trades in

exchange for TURN5's commitment to provide a minimum quantity of freight while the

agreement remained in force.

10.     The Contract provides as follows:

### 1. Essential Scope of Services

- Scope: Asia – North America
- Port of Loading: Direct port in Asia only. Loading in out ports – if any - is subject to special terms & conditions under appendix 1
  **Weekly Rate and Guaranteed Volume/ Space from May 2022 (first sailing date to be advised by GEODIS) up to, and including, April 30, 2025:**

| Service String | Port of Loading | Guaranteed Volume/Space per week sailing (TEUS) | Base Rate FEU 1 FEU=2 TEUS | Base Rate Compensation per TEU port to port only | Maximum Gross-Weight (including Tare) | Guaranteed space Credit Per TEU |
|---|---|---|---|---|---|---|
| PN3 | Yantian, Shanghai | 10 TEUS | $9,000 | $4,500 | 10 tons per TEU | $3,375 |
| IPI Kansas City/ Ramp | Seattle | | $3,500 | | | |

3

11.     This section means that for the PN3 string service, which involved loading containers at

the Ports of Yantian and Shanghai, TURN5 agreed to provide a minimum guarantee of 10

TEU's.  "TEU" stands for "twenty-foot equivalent unit" and is a measure of cargo volume

in units of twenty-foot-long containers.  "FEU" stands for "forty-foot equivalent unit" and

is a measure for cargo volume in forty-foot-long containers.  In this case, the base rate

charged by Geodis to TURN5 was $9,000 per FEU or $4,500 per TEU, with a maximum

gross weight of cargo being no more than 10 tons per TEU.[1]

12.     In addition, the Contract provides as follows:

> 2.  **Guaranteed Volume and Space**. The Customer shall ship the Guaranteed Volume and GEODIS shall provide the associated Guaranteed Space at the relevant Port of Loading, as specified in Section 1 herein, subject to the terms of this Agreement.
> 3.  **TEUs Guaranteed**. The Guaranteed Volume and the Guarantee Space shall be counted and assessed in TEUs.  GEODIS shall provide the Guaranteed Space for the Maximum Weight, in the amount of TEUs agreed. Customer shall provide the Guaranteed Volume in TEUs, up to the Maximum Weight. If Customer provides cargo for the full Maximum Weight, but fails to meet its guaranteed Volume of TEUs required under this agreement, Customer shall pay the Base Rate for the unused TEUS that week.

13.     The Contract further provides as follows:

> 5.  **Port of Loading**. Whenever more than one Port of Loading ("POL") is nominated and volume is not already agreed to per each POL, the Customer shall provide forecasts with four (4) weeks in advance of the estimated sailing date, specifying the volume to be loaded and the containers required (hereinafter "Initial Forecast"), provided GEODIS agrees to such Initial Forecast.
>     i.   GEODIS shall accept the Initial Forecast, if operationally feasible. Once accepted by GEODIS, the Initial Forecast shall become the Guaranteed Space and Guaranteed Volume for such week.
>     ii.  In the case where GEODIS cannot accommodate the Initial Forecast, GEODIS shall reject the Initial Forecast and offer an alternative distribution of the Guaranteed Space to Customer. In the event the Customer rejects the alternative volume distribution per POL provided by GEODIS, GEODIS will not incur liability for Guaranteed Space and the Customer remains obliged to provide the Guaranteed Volume pursuant to the alternative volume distribution.

---

[1] The IPI service is not relevant to this dispute.

And

> 17. **Term and Termination**. This Agreement will come into effect the date set forth above and will remain valid for a firm term of thirty-seven (37) consecutive months up to, and including, the 30th of April 2025 ("Term"). Upon expiration or termination of this Agreement as provided herein, GEODIS shall, as applicable, complete all Services for shipments in progress. GEODIS may, but shall not be required to, accept bookings for shipments that have an estimated completion date later than the effective date of expiration or termination. Customer shall pay GEODIS for all such Services completed and costs incurred as set forth herein.   In the event Customer terminates this Agreement in the absence of a material breach by GEODIS and before the agreed upon term of three years is reached, the Base Rate Compensation corresponding to the remaining Guaranteed Volume under this Agreement that was not shipped as a result of Customer's early termination   shall be due and payable to GEODIS within fifteen (15) days from Customer's actual termination date.

14.    After signing the Contract in March of 2022, TURN5 met its volume commitment without any objections.

15.    Starting on or about July 19, 2022, or more than three (3) months into the Contract, the ocean carrier Hapag-Lloyd advised Geodis that it was altering certain ports for some of the strings in its Pacific North Loop.  Hapag-Lloyd removed Shanghai as a port of loading from service string PN3, leaving just Yantian available as a port of loading for PN3.

16.    To honor its commitment under the Contract, Geodis promptly switched TURN5 to a combination of service strings, referred to as PN2 and PS5, to continue to provide the same ports of loading at both Yantian and Shanghai.

17.    TURN5 continued to honor its volume commitment under the Contract without complaint, despite using a combination of two (2) strings.  TURN5 never objected to the adjustment in service or accused Geodis of unilaterally altering a material term of the Contract. Certainly, TURN5 never demanded that the Contract be amended to reflect this adjustment, especially since Geodis continued to deliver TURN5's containers on time.

18.    Geodis' commercial relationship with TURN5 remained intact until March of 2023, or approximately twelve (12) months into the Contract, when TURN5 requested a change in the base rate and a decrease in the guaranteed volume or space per vessel.  Geodis believes that TURN5's request was prompted by a downturn in TURN5's retail market in United States.

19.    In an effort to accommodate its customer, Geodis agreed to adjust a number of terms of the Contract.  These adjustments included substantially reducing the TEU charge to TURN5 and documenting that Yantian and Shanghai would continue to be serviced as ports of loading through two strings, rather than one.  Geodis and TURN5 discussed these revised commercial terms at great length but were never finalized.

20.    Throughout these communications, Geodis never discussed cancelling a port of loading or sought to force TURN5 into an unfair commercial situation.  Rather, Geodis at all times sought to accommodate TURN5 by reducing its TEU rate and agreed to investigate other pricing, including Customs Brokerage, Foreign-Trade Zone and Final Mile delivery, in an effort to provide further savings to TURN5.

21.    Instead, on April 24, 2023, Mr. Nelson emailed Mr. Rene Bach-Larsen of Geodis to notify Geodis that the Contract was terminated.  TURN5's basis for early termination was the alleged, unilateral cancellation of one of the ports of loading.  A true and correct copy of the April 24th email is annexed hereto as Exhibit "B".  TURN5's allegation is a pretext for breaching the Contract and a rejection of Geodis' genuine efforts to accommodate TURN5's market conditions.

22.   On April 27, 2023, Mr. Ferron of TURN5 emailed Andrea Schneider and Connie Welch

of Geodis to cancel all future shipments without booking confirmation and move them to

the cheaper Freight All Kinds ("FAK") rate for May 1-15 for the lanes "Yantian-Shanghai-

Ningbo" to Lenexa, Kansas.  A true and correct copy of the April 27th email is annexed

hereto as Exhibit "C".

23.   On April 28, 2023, Mr. Bach-Larsen emailed Mr. Nelson advising TURN5 that they

unilaterally cancelled the Contract and advised TURN5 to continue to perform under the

Contract or pay damages for early termination.  A true and correct copy of the April 28th

email is annexed hereto as Exhibit "D".

24.   On May 26, 2023, Messrs. Hill Betts & Nash, counsel for TURN5, wrote to Geodis

advising that Geodis did not provide the contracted for services and therefore TURN5 was

justified in early termination.  A true and correct copy of the May 26th letter is annexed

hereto as Exhibit "E".

25.   On June 15, 2023, Ms. Crystal Moroney, Senior Corporate Counsel for Geodis, wrote to

Mr. Nelson of TURN5 notifying him that his April 24, 2023 email constituted termination

100 weeks before the expiration of the Contract, which triggered Section 17 of the Contract

and therefore TURN5 owed Geodis four million five hundred thousand dollars (USD 4,500

per TEU x 10 TEU's per week x 100 weeks = USD 4,500,000.00).  A true and correct copy

of the June 15th letter is annexed hereto as Exhibit "F".

26.   As of the date of filing this Complaint, TURN5 owes Geodis four million five hundred

thousand dollars (USD 4,500,000.00), no part of which has been paid.

27.     Geodis has duly performed all its duties and obligations under the Contract, and to TURN5

under all circumstances.

28.     TURN5 has continued to ignore Geodis's attempts to collect the amounts due and owing.

### AS AND FOR A FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

29.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs

"1" through "28", inclusive, as if fully set forth herein.

30.     At various times and places, TURN5 used services wherein Geodis agreed, among other

things, to coordinate various transportation related services at the direction or instruction

of TURN5 and/or pursuant to the Contract, in consideration for which TURN5 agreed to

pay Geodis.

31.     Geodis provided those services without delay or disruption to TURN5.

32.     Geodis provided ocean carriage services at both the Yantian and Shanghai without any

interruption.

33.     TURN5 terminated the Contract early without justification.

34.     Early termination triggers application of Section 17 of the CONTRACT which states as

follows:

In the event Customer terminates this Agreement in the absence of a material breach
by GEODIS and before the agreed upon term of three years is reached, the Base
Rate Compensation corresponding to the remaining Guaranteed Volume under this
Agreement that was not shipped as a result of Customer's early termination shall
be due and payable to GEODIS within fifteen (15) days from Customer's actual
termination date.

Exh. "B" at Section 17.

35.     As near as can now be determined, pursuant to Section 17 of the Contract, TURN5 owes Geodis four million five hundred thousand dollars (USD 4,500,000.00), plus interest, costs and attorney's fees and expenses.

## AS AND FOR A SECOND CAUSE OF ACTION
## (NEGLIGENCE)

36.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "35" of this Complaint as if more fully set forth herein.

37.     TURN5, its agents, servants and employees conducted themselves during the negotiation, placement, handling and care of its shipments negligently and in such a way as to be totally oblivious to Geodis's rights in such shipments, including but not limited to reimbursement for the transportation, booking, handling and care of said shipments.

38.     TURN5 was negligent and acted improperly with respect to the payment of all services arising from the Contract, which resulted in a loss of revenue, which is due and owing to Geodis.

39.     By reason of TURN5's negligence and improper conduct, plaintiff has been damaged in an amount of four million five hundred thousand dollars (USD 4,500,000.00), plus interest, costs and attorney's fees and expenses.

## AS AND FOR A THIRD CAUSE OF ACTION
## (GROSS NEGLIGENCE)

40.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "39" of this Complaint as if more fully set forth herein.

41.     TURN5, its agents, servants and employees conducted themselves during the negotiation, placement, handling and care of its shipments in a grossly negligent manner and in such a

way as to be totally oblivious to Geodis's rights in such shipments, including but not limited to reimbursement for the transportation, booking, handling and care of said shipments.

42. TURN5's gross negligence and improper conduct with respect to the negotiation, placement, handling and care of its shipments which resulted in the loss and/or theft of transportation services, which is due and owing to Geodis.

43. By reason of TURN5's gross negligence and improper conduct, plaintiff has been damaged in an amount of four million five hundred thousand dollars (USD 4,500,000.00), plus interest, costs and attorney's fees and expenses.

## AS AND FOR A FOURTH CAUSE OF ACTION
## ACCOUNT STATED

44. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "43", inclusive, as if fully set forth herein.

45. TURN5 entered into the Contract with Geodis which was terminated early by TURN5.

46. Pursuant to Section 17 of the Contract, TURN5 is nevertheless required to pay the remainder of the monies owed under the Contract.

47. On June 15, 2023, Geodis' Senior Counsel, Crystal Moroney wrote to TURN5 explaining the amount of monies due and owing under the Contract and demanded full payment, plus instructions on how to tender payment.

48. TURN5 ignored the June 15th letter and did not object in any way.

49. There are no setoffs or counterclaims concerning these monies owed under the Contract.

50.     The prices charged were just and reasonable and TURN5 agreed to pay the same.  TURN5,

        although frequently thereunto requested, have refused to honor their obligations and still

        refuse to pay the sum or any part thereof.

51.     As near as can now be determined, TURN5 owed Geodis in an amount of four million five

        hundred thousand dollars (USD 4,500,000.00), plus interest, costs and attorney's fees and

        expenses.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**<u>DETRIMENTAL RELIANCE</u>**

52.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs

        "1" through "51", inclusive, as if fully set forth herein.

53.     During the aforesaid discussions and negotiations aforesaid, and thereafter, TURN5

        represented to Geodis that it urgently needed a transportation service supplier which

        possessed the capability and experience to coordinate various kinds of transportation and

        logistics services in accordance with the specifications set forth by TURN5's customers.

54.     TURN5 then occupied and continues to occupy at the present time a supply chain program

        with respect to its own customers and said supply chain program relied upon the services

        procured through Geodis.

55.     TURN5 proceeded to induce Geodis to enter into the Contract, thereby becoming a supplier

        of transportation services for the benefit of TURN5's customers.

56.     In order to meet the specifications and delivery schedules set forth by TURN5 through the

        Contract, Geodis devoted resources to manage TURN5's transportation needs.

57.     In reliance upon the aforesaid representations by TURN5s set forth in the Contract, plaintiff

        did take the aforementioned actions to its detriment.

11

58.     By reason of the foregoing, TURN5 is liable to Geodis for damages.

59.     As near as can now be determined, TURN5 owed Geodis in an amount of four million five

hundred thousand dollars (USD 4,500,000.00), plus interest, costs and attorney's fees and

expenses.

**WHEREFORE,** plaintiff requests:

(a) That process in due form of law according to the practice of this Court may issue

against this TURN5.

(b) That a judgment be entered in favor of plaintiff, on each count, for the amounts

stated in this Complaint, including but not limited to compensatory damages,

together with interest, costs and attorney's fees and expenses.

(c) Such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
       October 3, 2023

                              KMA ZUCKERT LLC
                              Attorneys for Plaintiff
                              GEODIS LOGISTICS, LLC


                    By:    _____
                              David Y. Loh
                              1350 Broadway, Suite 2410
                              New York, NY  10018
                              (212) 922-0450
                              dloh@kmazuckert.com
                              (FILE NO.: 448024.00002 DYL)